IN THE UNITED STAES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOPE JONES, | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 13-2065 |
| CAROLYN COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                                           **March 4, 2015**

**MEMORANDUM**

Before the Court are the Objections of Hope Jones ("Petitioner"), (Dkt No. 17, Pl. Objections [hereinafter Pl. Objs.]), to the Report and Recommendation (R&R) issued on July 14, 2014 by Magistrate Judge Thomas J. Reuter. (Dkt No. 16, Report and Recommendation [hereinafter R&R].) After careful consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review, (Dkt No. 9), the Commissioner's Response to Request for Review of Plaintiff, (Dkt No. 13), Plaintiff's Reply, (Dkt No. 14), and after review of the Report and Recommendation, (R&R), Petitioner's Objections, (Pl. Objs.), the Commissioner of the Social Security Administration's Response, (Dkt No. 18, Cmmr's Resp. [hereinafter Resp.]), and Plaintiff's Reply, (Dkt No. 19, Pl. Rep. [hereinafter Rep.]), the Court overrules Plaintiff's objections, adopts Judge Reuter's R&R in its entirety, and orders that Plaintiff's request for review is DENIED.

**I.    Factual and Procedural History**

On February 3, 2010, Plaintiff filed an application for supplemental security income ("SSI"). (Dkt No. 8, Administrative Record [hereinafter Admin. R. 43].) On February 15, 2010, Plaintiff filed an application for disability insurance benefits ("DIB"). (Admin. R. 43.) In both applications, Plaintiff alleged disability beginning September 8, 2008. (Admin. R. 43.) Plaintiff's initial claims were denied. (Admin. R. 43.) Plaintiff filed a written request for a hearing. (Admin R. 43.) Plaintiff, who was represented by counsel, appeared and testified at said hearing on July 21, 2011, before Administrative Law Judge ("ALJ") Deborah Mande. (Admin. R. 43, 58-80.)

On July 29, 2011, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Admin. R. 53.) While it was determined that Plaintiff suffered from degenerative disc disease of the lumbar and cervical spine, hypertension, a history of congestive heart failure and cocaine abuse, the ALJ held that Plaintiff did not have an impairment or combination of impairments that constituted one of the listed Appendix 1 impairments found in Subpart P of 20 C.F.R. pt. 404. (Admin. R. 46.) The ALJ determined that Plaintiff's "degenerative spine impairment did not meet listing-level severity under § 1.04…" (Admin. R. 46.) Plaintiff's hypertension "did not meet listing-level severity under § 4.00….as there [wa]s no evidence of end-organ damage." (Admin. R. 46.) Finally, Plaintiff's history of congestive heart failure did not satisfy listing-level severity under § 4.00. (Admin. R. 46.)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Admin. R. 46.) Specifically, Plaintiff was able to "lift and carry up to 20 pounds occasionally, with frequent lifting or carrying of objects weighing up to 10 pounds." (Admin R. 46.) Further, the ALJ found that "Plaintiff was able to stand and walk for 4 hours and sit for 6 hours, in an 8-hour workday." (Admin R. 46.)

While finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they were inconsistent" with Plaintiff's RFC assessment. (Admin. R. 50.) The ALJ afforded the physical assessments of Dr. Sanjay Gupta, Dr. Mark D. Avart, and Dr. Onyeama Anakwe—Plaintiff's treating physicians—little weight. (Admin R. 51.) Dr. Gupta's assessment was afforded little weight because it was "not consistent with the longitudinal record." (Admin R. 51.) Dr. Avart's assessment was afforded little weight because Dr. Avart "stated he would limit Plaintiff's standing, walking, sitting, driving, and twisting, however he did not provide any specific limitations." (Admin. R. 51.) The ALJ gave little weight to Dr. Anakwe's conclusory statement that Plaintiff was "disabled" because this was a "decision reserved for the Commissioner" and the statement failed to identify "function-by-function limitations." (Admin. R. 51.) The ALJ further determined that Plaintiff was capable of performing past relevant work as a security guard given that "[t]his work did not require the performance of work-related

activities precluded" by Plaintiff's RFC. (Admin. R. 51.) Accordingly, the ALJ found Plaintiff to be "not disabled." (Admin. R. 53.)

On February 27, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Admin. R. 1-4.) Plaintiff subsequently filed the instant civil action. The matter was referred to United States Magistrate Judge Thomas J. Rueter for a Report and Recommendation ("R&R"). (Dkt No. 15.) Upon review, Judge Reuter concluded that Plaintiff's Request for Review should be denied. (R&R at 1.)

Plaintiff has filed Objections to the R&R. (Pl. Objs.) Plaintiff objects to: (1) the Magistrate Judge's determination that the ALJ properly rejected the opinions of Plaintiff's treating physicians in favor of the assessments by non-treating consultants, (Pl. Objs. at 1); (2) the Magistrate Judge supplying justifications for the ALJ's determinations that the ALJ did not supply himself, (Pl. Objs. at 3); (3) the Magistrate Judge's interpretation of the requirements related to the Drug and Alcohol Addiction (DAA) analysis, (Pl. Objs. at 4-5); and (4) the Magistrate Judge's assessment of the need for remand to consider new evidence. (Pl. Objs. at 3.)

## II.     Standard of Review

Objections to the Magistrate Judge's R&R are entitled to *de novo* review. 28 U.S.C. § 636(b)(1)(C).[1] However, the review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 32 U.S.C. §§ 405(g), 1382(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). Substantial evidence is difficult to precisely define; it "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 522, 565 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). In determining the existence of substantial evidence to support an

---

[1] This Court recognizes that although Plaintiff's Objections to Judge Reuter's Report and Recommendation R&R are duplicative of issues raised before the Magistrate Judge, they are nonetheless entitled to *de novo* review. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (clarifying that "any appeal to a district court based on an objection to a Magistrate Judge's order" is subject to *de novo* review even if it rehashes argument already presented to the Magistrate Judge).

ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

**III. Discussion**

**A.   The ALJ committed no error in affording the opinions of Plaintiff's non-treating physicians more weight than Plaintiff's treating physician.**

Plaintiff argues that by affording the opinions of Plaintiff's non-treating physicians more weight than Plaintiff's treating physicians, the ALJ did not properly review the medical opinion evidence. (Pl. Objs. at 1-4.) The Court finds that the ALJ did not commit error in affording the opinions of Plaintiff's non-treating physicians more weight than Plaintiff's treating physicians. The Court finds that the Magistrate Judge appropriately evaluated the record. The Court adopts the Magistrate Judge's R&R.

**1.   Legal Standard**

A treating physician's opinion is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2). The ALJ may reject a treating source's opinion "on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

If the ALJ determines that a treating physician's opinion should not be given controlling weight, the ALJ must instead apply other listed factors. 20 C.F.R. § 416.927(c)(2). These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories; (3) the relevant evidence to support the opinion; (4) the consistency of the opinion with the entire record; (5) whether the doctor is a specialist in the area in which he or she is offering the opinion; (6) other factors which support or contradict the opinion. *Id.* at § 416.927(c)(2)(i)-(ii), (c)(3)-(6). An ALJ is "not free to employ [his or her] own expertise against that of a physician" if that physician "presents competent medical evidence." *Plummer*, 186 F.3d at 429.

Plaintiff specifically argues that (1) the ALJ failed to consider the objective findings of her treating physicians, Dr. Anakwe, Dr. Avart, and Dr. Gupta in the report, (2) the ALJ

improperly considered Plaintiff's financial interest in worker's compensation and Social Security, and (3) the Magistrate Judge improperly rejected the argument that the ALJ should have contacted Dr. Anakwe for further clarification.

### 2. The ALJ properly gave little weight to the objective findings provided by Plaintiff's treating physicians.

#### a) Dr. Anakwe

Plaintiff argues that the ALJ improperly rejected objective findings contained in Dr. Anakwe's reports including findings of decreased range of motion, reduced muscle strength, severe muscle spasm, antalgic gait and tenderness to palpitation. (Pl. Objs. at 1-2.) The ALJ's decision to afford Dr. Anakwe's assessment little weight, even as to the clinical findings, is supported by the record.

 Dr. Anakwe treated Plaintiff from September 15, 2008 until September 30, 2009. (Admin. R. 47, 338-61.) The ALJ is authorized to reject a treating source's opinion "on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. In this case, the ALJ rejected Dr. Anakwe's determination of disability and afforded little weight to Dr, Anakwe's other findings because they were contradicted by evidence within the record. (Admin. R. 51.)

In reviewing the record *de novo*, the Court finds many reasons to support the ALJ's decision to afford Dr. Anakwe's findings little weight. (Admin. R. 338-64.) First, Dr. Anakwe's findings conflict with those of other medical professionals who inspected Plaintiff throughout the same time period. Between September 15, 2008 to September 30, 2009, Dr. Anakwe saw Plaintiff at over twenty appointments. (Admin. R. 338-64.) At every appointment, Dr. Anakwe recorded that Plaintiff reported her neck pain, low back pain, left shoulder pain, and right hip pain between 6-9 on a pain scale of 0-10. (Admin R. 338-64.) On every evaluation, Dr. Anakwe reported that Plaintiff had "difficulty performing daily activities." (Admin R. 338-64.) Dr. Anakwe reported that Plaintiff had a cervical spine range of motion ranging from 30% - 60%, a lumbar spine range of motion of 10% to 50%, and a left shoulder range of motion of 30% to 60%. (Admin. R. 338-64.) At every appointment, Dr. Anakwe noted that Plaintiff was "disabled." (Admin R. 338-64.) Yet, during the same period of time Dr. Anakwe considered Plaintiff to be "disabled," other physician records controvert that appraisal.

As a preliminary matter, on September 8, 2008, the date of Plaintiff's accident, Plaintiff arrived at the Chestnut Hill Hospital emergency department ("ED"), complaining of neck and

5

left shoulder pain due to a car accident suffered the day before. (Admin. R. 290-304.) According to the psychosocial report filed by Katrina Bland, R.N., Plaintiff was walking "independently" when she arrived at the ED and throughout her stay. (Admin R. 290.) During her visit to the ED, Dr. Trey Kamplain, M.D. found no fracture, subluxation, or prevertebral soft tissue swelling on Plaintiff's cervical spine. (Admin. R. 303.) Dr. Thomas Chayapruks found no fracture or dislocation on Plaintiff's left shoulder. (Admin. R. 304). According to the discharge report from Katrina Bland, RN, Plaintiff left the ED in "improved" condition and walked out with a "steady gait." (Admin. R. 291.)

On December 22, 2008, during the period of time Plaintiff was being examined by Dr. Anakwe, Plaintiff was examined by Dr. Richard Schmidt, M.D. for the purposes of an Independent Medical Evaluation. (Admin R. 365-78.) Dr. Schmidt made the following findings of relevance to this review:

> The patient denies any complaints involving her knees, mid-back or lower back. The patient indicates that currently her right hip is asymptomatic, although she does have some lingering discomfort over the right mid-thigh area…The patient's current complaint is that of some discomfort generalized around the left shoulder area. The patient also complains of some discomfort over the left side of her neck, but denies any radiation down the arm. The patient denies any numbness weakness or tingling involving either arm….The patient denies any additional complaints…The patient indicates that she injured her neck and lower back as a result of the motor vehicle accident in 2005, but after some brief treatment everything resolved…Examination today of the neck demonstrates full range of motion….Examination today of both shoulders demonstrates full range of motion bilaterally. The patient has full and symmetric overhead range of motion to 160-degrees…Once again, the patient denies any mid-back or lower back complaints…The patient demonstrates a normal gait in the examining room today, without the use of a cane…The impression at this time is that this patient is fully recovered from the episode of 9/8/08.

(Admin R. 375-78.)  This report stands in marked contrast to all of Dr. Anakwe's reports, but is particularly stark in contrast to Dr. Anakwe's report from December 29, 2008 (just one week after Dr. Schmidt's examination). In Dr. Anakwe's December 29th report, Dr. Anakwe reports that Plaintiff "described radiating pain, numbness, tingling…" (Admin. R. 354.) This directly contradicts Dr. Schmidt's finding that Plaintiff "denies any radiation down the arm." (Admin R. 375.) Dr. Anakwe reported that Plaintiff's cervical spine range of motion was 40% and her left shoulder range of motion was 60%. (Admin. R. 354.) This too directly conflicts with Dr. Schmidt's findings that Plaintiff's "neck demonstrates full range of motion….both shoulders

6

demonstrate[] full range of motion bilaterally….[and] patient has full and symmetric overhead range of motion to 160-degrees…" (Admin R. 375-78.) Dr. Anakwe reported that Plaintiff "has difficulty…walking," (Admin. R. 354), while Dr. Schmidt reported that Plaintiff "demonstrates a normal gait in the examining room today, without the use of a cane." [2] (Admin. R. 375-78.) This side-by-side comparison illustrates what was apparent to the ALJ and to the Magistrate Judge in reviewing this record: Dr. Anakwe's conclusions do not match the longitudinal record.

Considering the abundance of evidence within the record contradicting Dr. Anakwe's findings, Dr. Anakwe's stated objective findings of decreased range of motion, reduced muscle strength, severe muscle spasm, antalgic and tenderness to palpation were properly given little weight.

### b) Dr. Avart

Dr. Avart treated Plaintiff from April 21, 2009 to June 15, 2010.  (Admin. R. 454-62.) Plaintiff argues that the ALJ failed to consider Dr. Avart's "objective findings" regarding Dr. Avart's statement that Plaintiff is "limited in her standing, walking, sitting…"(Pl. Objs. at 4.)

First, the Court finds that the ALJ did not reject or fail to consider Dr. Avart's objective findings. The ALJ cited to and considered Dr. Avart's *objective* findings in her Opinion. (*See* Admin. R. 48.) The ALJ also held that she did not need to afford Dr. Avart's *subjective* opinions much weight. (Admin. R. 51.)

Second, it was appropriate for the ALJ to afford these opinion statements little weight considering all the medical testimony in the case.[3] Dr. Avart's statements conflict with the findings of the longitudinal record and credible medical reports from around that same period. For example, in his June 15, 2010 report, Dr. Avart stated that Plaintiff was "limited in her

---

[2] Plaintiff also argues in her Objections that the Magistrate Judge improperly found that Plaintiff's cane was not medically necessary. (Pl. Objs. at 6-7.) The record supports the Magistrate Judge's, and the ALJ's determination that Plaintiff's use of a cane was not medically necessary. (Admin. R. 48, 376.) Dr. Schmidt noted that, although Plaintiff used a cervical collar and cane, his evaluation led him to believe that there was "no clinical indication or benefit for the use of a cervical collar or cane." (Admin R. 376.)

[3] The ALJ afforded these opinions little weight, in part, because "Dr. Avart stated that he would limit the claimant's standing, walking, sitting, driving and twisting, but did not provide any specific limitations." (Admin. R. at 51.) Plaintiff objects to the Magistrate Judge's finding that *Gilroy v. Astrue*, 351 Fed. Appx. 714, 716 (3d Cir. 2009) (not precedential) supports the ALJ's decision as to this point. (Pl. Objs. at 4.) *Gilroy* concerns an ALJ's rejection of a Global Assessment of Functioning ("GAF") score because the doctor did not express any opinions regarding specific limitations that Plaintiff had. 351 Fed. Appx. at 715. The Court agrees with Plaintiff that this case is distinguishable from *Gilroy*. However, the Court finds that the Magistrate Judge's other reasons explained herein justify the ALJ's affordance of little weight to Dr. Avart's subjective opinions.

standing, walking, sitting, driving, lifting." (Admin. R. 454.) On August 4, 2010, less than two months later, Dr. Stacey B. Lendener, M.D. performed a consultative examination on Plaintiff. (Admin. R. 485-91.) Dr. Lendener found that Plaintiff had a "steady" gait, "mildly reduced" cervical range of motion and flexion and bilateral rotation, no deformity but "mild-to-moderate muscle spasm" in her trapezius area, "reduced" range of motion in forward flexion and bilateral rotation, and "normal" range of motion in upper extremities. (Admin. R. 485-87.) Dr. Lendener assessed that Plaintiff had "low back pain, neck pain, and hypertension," (Admin R. 488), and could stand and walk for four to six hours per day. (Admin. R. 491.) In contrasting Dr. Avart with Dr. Lendener and with the whole record, the ALJ found that "the assessment of Dr. Lendener is more consistent with the longitudinal record and with her relatively minor findings on physical examination," and was thus due more weight than Dr. Avart's opinions. (Admin. R. 51.) The Court agrees.

In reviewing the record *de novo*, the Court finds that there was sufficient medical evidence in the record standing in opposition to Dr. Avart's subjective findings to afford such findings less weight. (Admin. R. 454-84.)

### c) Dr. Gupta

Plaintiff objects to the Magistrate Court's finding "that the ALJ properly discounted the opinion of Dr. Gupta that Ms. Jones is limited to lifting/carrying two to three pounds, standing/walking for one hour or less, sitting for one to two hours and never performing postural activities," because (1) the ALJ should have considered Dr. Gupta's objective findings, and (2) Dr. Gupta's opinions are consistent with Dr. Avart's and Dr. Anakwe's and should be given deference. (Pl. Objs. at 4.)

First, the Court finds that the ALJ did consider Dr. Gupta's *objective* findings. (Admin. R. 49.) The ALJ gave little weight to Dr. Gupta's *subjective* opinion findings.

Second, the Court finds that the record supports affording Dr. Gupta's subjective findings little weight. Dr. Gupta saw Plaintiff on October 19, 2009. (Admin. R. 392-400.) On that date, Dr. Gupta reported that Plaintiff could "occasional[ly]" carry or lift only two to three pounds, could stand and walk for one hour or less per day, could sit for one to two hours per day, and could never bend, kneel, stoop, crouch, balance, or climb. (Admin. R. 397-98.) Such extreme limitations do not match the credible evidence from Dr. Schmidt roughly ten months earlier or Dr. Lendener roughly nine months later. On December 22, 2008, Dr. Schmidt found that Plaintiff

8

"demonstrate[d] a normal gait in the examining room today, without the use of a cane." (Admin. R. 375-78.) On August 4, 2010, Dr. Lendener found that Plaintiff could stand and walk for four to six hours per day. (Admin. R. 491.) The ALJ found that Dr. Gupta's subjective findings stood in contrast to the longitudinal record. (Admin. R. 51.) The Court agrees.

### 3. The ALJ did not improperly consider Plaintiff's financial interest in worker's compensation and Social Security.

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly considered Plaintiff's financial interest in worker's compensation and Social Security as a reason for discounting Dr. Anakwe's opinions. The Court agrees with the Magistrate Judge that the ALJ's consideration of Plaintiff's financial interest is of no consequence because the ALJ outlined many persuasive reasons for giving Plaintiff's treating physicians' opinions little weight. (R&R at 11 n 9.)

The Court appreciates that the ALJ noted that "Dr. Anakwe's opinions appear to focus heavily on the work-related injury and causational issues." (Admin. R. 51.) However, review of the ALJ's complete opinion demonstrates that consideration of Plaintiff's financial interest was only one of the considerations that the ALJ discussed in deciding to discount the opinions of Plaintiff's treating physicians. For example, in that same section of the ALJ's opinion, the ALJ spent substantially greater time explaining that the findings of Plaintiff's non-treating physicians were "more consistent with the longitudinal record . . . ." than those of her treating physicians. (Admin. R. 51.) As discussed in greater detail *supra*, the Court finds that the ALJ properly gave less weight to the findings of Plaintiff's treating physicians because of the contradicting medical evidence in the record. Subsidiary considerations of the ALJ do not undermine the rationality and accuracy of the ALJ's determination that the treating physicians' conclusions were at odds with other medical evidence in the record.

### 4. The ALJ was not required to recontact Dr. Anakwe for further clarification.

Plaintiff argues that the Magistrate Judge improperly found that the ALJ did not need to recontact Dr. Anakwe for further clarification. (Pl. Objs. at 3-4.) According to Plaintiff, the ALJ should have recontacted Dr. Anakwe in order to receive "further elucidation . . . concerning his repeated statements that [Plaintiff] is disabled." (Pl.'s Objs. at 3.) In support of this proposition

Plaintiff cites to two cases: *Diaz v. Astrue*, 2011 WL 3862309 (E.D. Pa. 2011) and *Salgado v. Astrue*, 2007 WL 2404713 (E.D. Pa. 2007).

These cases can be distinguished from the case before this Court. In both *Diaz* and *Salgado*, the Courts found that the ALJs failed to consider evidence that should have been considered in making their determinations. *Diaz v. Astrue*, 2011 WL 3862309, at *8 (finding that the ALJ failed to consider treating physician's opinion that Plaintiff's alcohol use did not aggravate her underlying mental condition); [4] *Salgado v. Astrue*, 2007 WL 2404713, at *2 (holding that "the ALJ failed to properly explain her rejection of the medical evidence regarding the severity of [Plaintiff's] impairment").

In this case, there is no such finding. The ALJ, where appropriate, considered the opinions of Dr. Anakwe and decided to afford Dr. Anakwe's findings little weight because they were contradicted by other evidence within the record. (Admin. R. 48, 51.) Further, Dr. Anakwe's statements that Plaintiff was "disabled" would never be due further evaluation as that is a conclusion reserved exclusively for the ALJ. No clarification is needed for an assertion that has no significance.

### B. The Magistrate Judge only relied upon the grounds that the ALJ relied upon.

Plaintiff argues that the Magistrate Judge provided justifications for the ALJ's determinations that the ALJ did not supply herself. In reviewing an agency's decision, the decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. *Securities & Exch. Comm'n v. Chenery*, 332 U.S. 194 (1947). Regardless, the points of evidence that Plaintiff alleges that the Magistrate Judge's R&R improperly relied upon were all considered and relied upon by the ALJ as well.

---

[4] The Court notes that the Court in *Diaz* did not mandate or require the ALJ to recontact the relevant physician. In *Diaz*, the Court did not require the ALJ to re-contact Plaintiff's treating physician. After remanding the case "for proper consideration of the medical opinions," the Court noted that "[i]n the event the information submitted by plaintiff's treatment providers needs clarification the ALJ may recontact these sources." 2011 WL 3862309, at *8 n. 7. This suggestion is far from a requirement that the ALJ must recontact Plaintiff's treating physicians.

> 1. **The Magistrate Judge correctly cited and appropriately relied upon the ALJ's use of Plaintiff's work as a home health aide when considering the appropriate weight to give to Dr. Anakwe's reports.**

Plaintiff suggests that the Magistrate Judge's reliance upon Plaintiff's work as a home health aide was improper because the ALJ found that Plaintiff was not "engaged in substantial gainful activity" ("SGA"). (Pl. Objs. at 3 (citing R&R at 13-14; Admin. R. 45.)) This argument misstates both the ALJ's Opinion and the R&R's reliance thereon.

The ALJ addressed Plaintiff's work as a home health aide in two different sections of the Opinion. First, the ALJ held that while Plaintiff's work as a home health aide would generally "clearly constitute SGA," but, in the interest of giving Plaintiff the "benefit of every doubt," the ALJ did not consider such work as SGA. (Admin. R. 45.)

Second, while not construing such work as "SGA," the ALJ did further mention the work for JEVS while examining the medical evidence. (Admin. R. 50.) The ALJ wrote: "The claimant's doctor at GEMEDCO [Dr. Anakwe] carried claimant as totally disabled through November 2009, the same period of time she was working (and earning $13,997.06) for JEVS. The doctor's notes do not reflect any work activity during that time." (Admin R. 50.) In this section, the ALJ was not relying on the work as an example of SGA, or proof that Plaintiff was in fact able to do SGA. Rather, the ALJ was relying on the fact of any work being performed by Plaintiff as relevant to what type of deference and weight to give to the medical testimony provided by Dr. Anakwe. The ALJ's reference to the home health aide work was not meant to go to the truth of the matter asserted (e.g., that Plaintiff could indeed perform SGA), but rather was used as impeachment evidence against the credibility of Dr. Anakwe's reports that Plaintiff was "totally disabled."

The R&R's reference to Plaintiff's home health aide work is squarely in line with the ALJ's approach in this second section. The R&R quotes the ALJ's analysis, "[A]s the ALJ indicated, during the time Dr. Anakwe deemed plaintiff totally disabled, she admittedly was 'working (and earning $13,997.06 for JEVS. The doctor's notes do not reflect any work activity during that time.'" (R&R at 12-14 (quoting Admin. R. 50.)) The Magistrate Judge relied upon this quote in finding that the ALJ demonstrated that Dr. Anakwe's opinions need not be given controlling weight. The Court finds no error.

> 2. **The ALJ's Opinion was written in reliance on "all of the evidence." Thus, the Magistrate Judge's citations to findings by Dr. Anakwe and Dr. Avart, even those that were not specifically mentioned in the ALJ's opinion, were appropriate.**

Plaintiff argues that the Magistrate Judge referenced objective findings by Dr. Anakwe and Dr. Avart that were not relied upon by the ALJ. (Pl. Objs. at 3-4.) After reviewing the record, this Court finds that certain objective findings of Dr. Anakwe referenced by the Magistrate Judge were not specifically mentioned by the ALJ. However, the ALJ did consider this evidence in her Report: "[a]fter careful review *of all of the evidence*, I conclude the claimant has not been under a disability within the meaning of the Social Security Act. . . ." (Admin. R. 43.) (emphasis added). The ALJ was not required "to make reference to every relevant treatment note," given the volume of medical records contained within the record. *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001). The ALJ's, the Magistrate Judge's, and even this Court's, citations to findings by Dr. Anakwe and Dr. Avart that were not specifically referenced in the ALJ's Opinion are appropriate so long as these findings were part of "all of the evidence" available to the ALJ. The Court finds that the record relied upon by the Magistrate Judge was the same as that relied upon by the ALJ. The Court finds no error.

> 3. **The Magistrate Judge's consideration of Plaintiff's noncompliance with hypertension medication was appropriate when determining Plaintiff's credibility.**

Plaintiff argues that the ALJ did not consider the noncompliance for Plaintiff's credibility. (Pl. Objs. at 6 (citing R&R at 20-21.)) After reviewing the ALJ's consideration of Plaintiff's non-compliance, the Court finds that the ALJ did review Plaintiff's non-compliance for the purpose of determining Plaintiff's credibility. The ALJ's mention of Plaintiff's non-compliance is embedded in a lengthy paragraph discussing Plaintiff's credibility. (Admin. R. 50.) The ALJ notes that while Plaintiff testified that she spent twenty-four hours a day in bed, Plaintiff also testified that she attended Narcotics Anonymous ("NA") meetings three times a week. (Admin. R. 50.) The ALJ subsequently noted that while the record confirms Plaintiff's high blood pressure, the record also indicates Plaintiff's non-compliance with hypertension medications. (Admin. R. 50.) After considering this conflicting evidence, the ALJ concluded that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (Admin. R. 50.)

Therefore, the Court finds that Plaintiff's non-compliance was considered by the ALJ to determine Plaintiff's credibility. Thus, the Court finds no error in the Magistrate Judge's statement that "[t]he ALJ properly considered plaintiff's noncompliance as one factor relating to plaintiff's credibility." (R&R at 21 (citing Admin R. 50.))

### C. The Magistrate Judge's interpretation of the requirements related to Drug and Alcohol Addiction (DAA) analysis were proper.

#### 1. The ALJ was not required to conduct a DAA analysis because the ALJ did not make an initial finding of disability.

Plaintiff argues that the Magistrate Judge's interpretation of the requirements related to the DAA analysis were improper. (Pl. Objs. at 4-5.) Plaintiff argues that the Magistrate Judge stated that a DAA analysis was not necessary because the evidence does not indicate that claimant used drugs for a consecutive period of twelve months and because the ALJ did not make an initial finding of disability. (Pl. Objs. at 4.) Plaintiff argues that both rationales reflect a misunderstanding of the DAA requirements. (Pl. Objs. at 4-5.)

The Court disagrees. The Magistrate Judge correctly interpreted the DAA regulations. Section 404.1535 states, in relevant part, "*If we find that you are disabled and* have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535 (emphasis added). Thus, "[i]n cases where there is evidence of drug addiction or alcoholism, the ALJ first performs the normal five-step analysis to determine if the claimant is disabled. 20 C.F.R. § 416.935(a). Assuming he concludes that she is disabled (including any impairment attributable to DAA), he then performs a second analysis to determine the effects of drug or alcohol abuse." *Davis v. Astrue*, 830 F. Supp. 2d 32, 38 (W.D. Pa. 2011). Given that the ALJ found Plaintiff to be "not disabled," the ALJ was not required to conduct a DAA analysis. The Court finds no error.

#### 2. The ALJ was not required to consider Plaintiff's substance abuse and related effects.

Plaintiff argues that the Magistrate Judge improperly stated that the ALJ did not err in failing to develop the record regarding Plaintiff's alleged schizophrenia and substance abuse. (Pl.

Objs. at 5-6.) While the record does contain Plaintiff's suggestion to a physician that the "only time she has been psychotic is with drug use," (Admin. R. 545), Plaintiff's self-diagnosis cannot be considered as objective medical evidence. *See McClease v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 101190, at *27 (E.D. Pa. 2009) ("Doctor's notes that are 'simply a recitation of [claimant's] own subjective complaints' and uncorroborated by physical examination are not objective medical evidence.") (quoting *Hatton v. Comm'r of Soc. Sec.*, 131 F. App'x 877, 879 (3d Cir. 2005)). The ALJ was not required to consider Plaintiff's substance use and its effects because there was no objective medical evidence that suggested that Plaintiff suffered from a substance use disorder or schizophrenia.

Plaintiff also argues that the ALJ failed to attempt to develop the record as to her alleged substance abuse and related effects and cites to *Reefer v. Barnhart*, 326 F. 376, 380 (3d Cir. 2003). (Pl. Objs. at 5-6.) *Reefer* held that an ALJ owes a duty to develop the record to a *pro se* claimant. 326 F. at 380. Plaintiff was represented by counsel and did not proceed *pro se*. (Admin. R. 43.) The Court finds no error.

### D. Denial of Plaintiff's request for remand for consideration of new evidence was proper.

Plaintiff argued that remand was warranted to consider additional evidence. (Pl. Objs. at 7-8.) The Court disagrees and finds no error.

#### 1. Legal Standards

"When a claimant seeks to rely on evidence that was not before the ALJ [at the time the ALJ issued its decision,] the District Court may remand the case, but only when the claimant satisfies the burden of showing good cause why that evidence was not presented to the ALJ." *Fouch v. Barnhart*, 80 F. App'x 181, 186 (3d Cir. 2003) (holding that submission of a two-page letter in which Plaintiff's physician states that Plaintiff was "totally and permanently disabled" did not satisfy the good cause requirement where Plaintiff failed to state any reason why such evidence was not presented at a time it could have been considered by the ALJ) (citing *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001)). In addition, Plaintiff must also demonstrate that the evidence which Plaintiff now offers is new and material. *See Matthews*, 239 F.3d at 594. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of *the*

14

*subsequent deterioration of the previously non-disabling condition*." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (emphasis added).

### 2. Remand for consideration of the April 8, 2013 X-ray was not necessary.

Plaintiff argues that the case should be remanded for the ALJ to consider an April 8, 2013 X-ray showing "pronounced loss of disk height at L3-4 with marked irregularity of the endplates as well as extensive sclerosis of both vertebrae." (Pl. Objs. at 7-8.) Plaintiff argues that she has suffered from degenerative disc disease since 2009 and that MRIs currently in evidence from 2009 provide evidence of this degenerative disease. (Pl. Objs. at 8.) However, Plaintiff explains that because "[d]egenerative disc disease develops slowly over time," the new X-rays provide context to Plaintiff's 2009 MRIs already in the record. (Pl. Objs. at 7-8.)

In 2009, the ALJ reviewed the MRIs then in evidence. The ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar and cervical spine. (Admin. R. 46.) However, the ALJ concluded that Plaintiff's impairment did not constitute one of the listed Appendix 1 impairments. (Admin. R. 46.) Plaintiff now argues that because the impairment allegedly worsened, as purportedly shown in the 2013 X-ray, the ALJ's 2009 determination should be reevaluated with the benefit of hindsight.

Such evidence fails to meet the materiality requirement. The 2013 X-ray evidence showing the alleged "subsequent deterioration" of Plaintiff's degenerative disc disease does not render the "previously non-disabling condition" suddenly disabling. *See Szubak*, 745 F.2d at 833. The evidence is not material. The Magistrate Court made no error.

### 3. Remand for consideration of the July 3, 2012 progress note and the January 16, 2012 echocardiogram was not necessary.

Plaintiff argues that the Magistrate Judge should have remanded to allow the ALJ to consider the progress note dated July 3, 2012 and echocardiogram dated January 16, 2012. (Pl. Objs. at 8.) These studies relate to the alleged worsening of Plaintiff's cardiac functioning. The ALJ did consider Plaintiff's claims for chest pains, but found that such impairments did not rise to the level of disability. (Admin. R. 49-50.) The 2012 progress note and echocardiogram evidence do not render the "previously non-disabling condition" suddenly disabling. *See Szubak*, 745 F.2d at 833. Evidence showing a worsening of a previously non-disabling condition is not material. The Magistrate Court made no error.

**IV.     Conclusion**

For the reasons set forth, the Court adopts Judge Reuter's R&R and affirms the decision of the Commissioner.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.